1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   CLAUDIA "ISAAC" MEDINA,          )   Case No.: 1:19-cv-0345 - DAD - JLT
                                      )
12            Plaintiff,              )   FINDINGS AND RECOMMENDATIONS
                                      )   DISMISSING CERTAIN CLAIMS AND
13       v.                           )   DEFENDANTS
                                      )
14   EDMUND G. BROWN, JR., et al.,    )
                                      )
15            Defendants.             )
                                      )
16   _____ )

17        The plaintiff was incarcerated previously at Central California Women's Facility[1] where he

18   alleges he was assaulted by employees of the California Department of Corrections and Rehabilitation.

19   He asserts that during the assault he suffered the use of excessive force and sexual abuse/harassment,

20   and was denied access to medical care.  He claims violations of his rights protected by the Eighth

21   Amendment.

22   **I.        Screening**

23        In general, the Court screens complaints brought by prisoners seeking relief against a

24   governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  The

25   Court must dismiss a complaint or portion thereof if the prisoner raises claims that are legally frivolous,

26   malicious, fail to state a claim upon which relief may be granted, or "seeks monetary relief from a

27

28        _____
          [1] Isaac Medina's legal name is Claudia Medina. As Plaintiff does in the operative complaint, the Court will refer
     to Medina by his chosen name and the male pronoun. (*See* Doc. 6 at 2, n.1)

                                         1

defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1),(2); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II.     Factual Allegations

Medina asserts he "is a transgender prisoner under the custody and control of [the] California Department of Corrections and Rehabilitation," who was incarcerated at Central California Women's Facility in January 2017. (Doc. 6 at 3, ¶ 9) He reports he "takes medication four times a day, including a transgender hormone treatment and medication to treat seizures, PTSD, [and] pain from an antitransgender attack several months earlier at a different institution." (*Id.* at 5, ¶ 17) Medina alleges that at the relevant time, he was disabled and "[h]is accommodations included the use of a walker, and the prohibition of handcuffing him behind his back." (*Id.* at 8, ¶ 49)

"On January 4, 2017, Medina was moved into restricted custody and assigned to Unit 503." (Doc. 6 at 5, ¶ 17) Medina asserts that the evening he arrived at Unit 503, he requested to be released from the cell by Officer Dalie "to retrieve his medication." (*Id.*, ¶ 19) According to Plaintiff, "Officer Dalie accused him of lying about his medical needs," and had "other prisoners take Medina's identification to the nurse to verify Medina's medical needs." (*Id.*) Once Officer Dalie received confirmation of Medina's need for medication, he released Medina to retrieve it. (*Id.*)

Medina asserts that the next day, "Officer Dalie again scrutinized Medina's medication needs." (Doc. 6 at 5, ¶ 20) Medina alleges: "After opening [his] cell door, Officer Dalie stood in the doorway and physically intimidated Medina. He told Medina that he knew who Medina was and knew about the anti-transgender attack of which Medina had previously been the victim." (*Id.*, ¶ 21) Medina asserts he "waited for Officer Dalie to move," and once the officer did so, he left the cell. (*Id.*, ¶ 22) However, "Officer Dalie trailed Medina and verbally harassed him." (*Id.* at 6, ¶ 23) Medina asserts he asked Dalie to stop and then "asked another guard in the Unit to ask Officer Dalie to stop." (*Id.*, ¶¶ 24-25)

According to Medina, "[f]ollowing [his] request of the other officer, Officer Dalie lunged at him," and "attempted to grasp Medina and put him in a headlock." (Doc. 6 at 6, ¶ 26) Medina asserts he dodged the grasp, and "Officer Dalie slipped and fell in a pool of water created by a leaking washing machine." (*Id.*, ¶¶ 27-28) Medina alleges Dalie then "shut Medina's cell door so that Medina was trapped with him in the Unit," and "again attempted to get Medina in a headlock." (*Id.*, ¶¶ 28-29)

Although Medina dodged the headlock, he asserts "Officer Dalie gripped [him] and slammed him against the wall." (*Id.*, ¶ 30) Plaintiffs assert, "Officer Dalie called a code, which alerted other guards to respond to his location," and Officers Rubalcava, Mendoza, Valencia, and Del Toro responded to the code. (*Id.*, ¶¶ 32-33)

Medina alleges, "Sergeant Rubalcava approached Medina, put his arm around Medina's neck and held him in a chokehold while Officer Dalie attempted to handcuff Medina and Officers Valencia and Mendoza put Medina in leg shackles." (Doc. 6 at 6, ¶ 35) In addition, he asserts:

> After placing Medina in leg shackles and placing Medina's right hand in the handcuffs, Officer Dalie began to punch Medina in the side of his abdomen. Officers then performed an unnecessary and violent maneuver on Medina, known as "tossing." With one officer stepping on the chain separating Medina's leg cuffs, another [officer] shoved Medina from behind, causing him to fall forward. He twisted slightly to avoid falling on his face, and ended up crashing down onto his right side.
> Once on the ground, Officer Dalie applied pressure to Medina's back and Sergeant Rubalcava choked him again. The officers secured Medina's left hand in handcuffs behind his and brought Medina to his feet and [pinned] him again against the wall.

(*Id.* at 6-7, ¶¶ 35-36) According to Medina, the handcuffing of his hands behind his back, rather than the front of his body, "caused unnecessary pain" because he "has a known medical requirement that his hands be handcuffed in front of his body or in waist chains." (*Id.* at 7, ¶ 37) He also alleges the officers caused "unnecessary pain by holding Medina's handcuffed arms straight out behind him and lifting up so that his arms were closer to parallel with the ground." (*Id.*)

Medina asserts Sergeant Rubalcava "ordered Officer Mendoza, a female guard, to pat down Medina." (Doc. 6 at 7, ¶ 38) Mendoza contends he "attempted to position himself in a manner that would allow for the pat down, but Sergeant Rubalcava continuously forced Medina against the wall" and another officer "attempted to kick Medina's legs apart," despite the leg shackles. (*Id.*, ¶¶ 38-39) He alleges that during the pat down, Officer Mendoza loosened the string on his sweat pants, which caused the pants to fall "and exposed his genitals." (*Id.*, ¶ 40)

Medina reports that after the pat down, he was escorted outside by unspecified officers, while he was "in a tank top with his pants down, … both his hands and legs cuffed, and his hands held up in an excruciating manner." (Doc. 6 at 7, ¶ 41) He alleges that his "nude lower body was exposed to prisoners and other guards," and Medina "pleaded with the guards to raise his pants and allow him to

cover himself," but was thrown to the ground by "the defendant officers who had assaulted [him] previously." (*Id.* at 7-8, ¶¶ 42-43) Medina alleges Officer Del Toro then approached Medina with a wheelchair, which Medina was placed in "further exposing his genitals." (*Id.* at 8, ¶ 45) Medina asserts the way he was placed in the wheelchair "kept his hands straight and lifted over the back of the wheelchair," and "Officer Del Toro assisted in holding Medina's arms in that manner." (*Id.*) Medina asserts that Lieutenant Tegtmeyer "observed the situation unfold outside… [and] made encouraging remarks to the officers." (*Id.* at 8, ¶ 46)

Medina alleges he was then removed from the wheelchair and walked to the Unit A Program Office, where "Sergeant Rubalcava and Officer Valencia slammed … Medina's head into the wall, causing his head to bleed." (Doc. 6 at 6-7, ¶¶ 47, 50) Medina asserts he was placed in an isolation cell "with his hands cuffed behind his back, his legs chained, and his pants pulled down exposing his genitalia." (*Id.* at 6 ¶ 48) He reports that he "was left insolation for four hours and not check on in regular intervals," and "[w]hen he was checked on, his pleas to go to the bathroom or have water were ignored." (*Id.* at 9, ¶¶ 51-52)

According to Medina, while he was in the cell, "defendant officers continued to berate and make crude comments to him about his gender identity and their perceptions of his masculinity," including taunting "him for not being a 'real man.'" (Doc. 6 at 9, ¶ 53) He asserts that "[a]bout 30 minutes into his confinement, Lieutenant Tegtmeyer came to his cell and began making sexual comments to Medina." (*Id.*, ¶ 54) Specifically, Medina alleges: "He told other guards, in front of Medina, that Medina had not been with a man in a long time. He suggested that he take Medina to a room around the corner to have sex with him. He said no one would know because Medina was already bloodied up from the attack." (*Id.*) As a result, "Medina grew concerned that he would be sexually assaulted or raped by Lieutenant Tegtmeyer." (*Id.*)

Medina alleges that after about four hours in the cell, he "was released and allowed to go to medical to have an evaluation performed on him." (Doc. 6 at 9, ¶ 54) He asserts his injuries included "a dislocated shoulder that was so severe that he could see a bone tenting his skin" and "cuts on his head and ankles." (*Id.* at 9, ¶ 56) Medina alleges the nurses who evaluated him "were visibly distraught at his injuries" but the nurses "simply documented [the injuries] and released him back to the officers

so that he could be placed in Administrative Segregation." (*Id.* at 9, ¶ 55)  Medina asserts he also now "suffers from carpel tunnel and nerve damage in his wrists," "loses grip strength intermittently[,] and suffers from chronic pain."  (*Id.*, ¶ 56)

Medina contends he "was denied medical treatment by the officers who assaulted him" and his "co-pay slip requesting medical care… were ignored" once he was released from the cage.  (Doc. 6 at 10, ¶¶57-58)  Five days later, Medina began a "hunger strike to draw attention to his needs," and then he "filed a 602 requesting medical care" on January 15, 2017.  (*Id.*, ¶¶ 59-60)  Medina reports that despite these efforts, he "was not provided medical care until he was moved to California Institute of Women ("CIW") on February 28, 2017."  (*Id.*, ¶ 61)  He asserts that "[h]e was denied medical care for nearly two months, causing him unnecessary pain and anguish and resulting in lasting pain and weakness in his shoulder."  (*Id.*)

According to Medina, "[t]he transphobic comments he endured during the incident was not an isolated incident. On nearly a daily basis, at CCWF and his current location CIW, Medina's gender identity is attacked by officers."  (Doc. 6 at 10, ¶ 62)

## III.    Procedural History

Stacy Rojas, Ivette Ayestas, Sara Lara, and Medina initiated filed a complaint for violations of their civil rights under 42 U.S.C. § 1983 and the Americans with Disabilities Act on November 9, 2017, thereby initiating Case No. 1:17-cv-1514-DAD-JLT.[2]

On April 23, 2018, the Court ordered the plaintiffs to show cause why the complaint should not be dismissed to the extent defendants were sued in their official capacities, observing "states cannot be sued in federal court for violating § 1983" and the Eleventh Amendment, "in general, bars suits for damages against state officials in their official capacities because, in effect, this is a claim against the entity."  (Case No. 1:17-cv-1514-DAD-JLT, Doc. 23 at 2, citing *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985))  Further, the Court directed Plaintiffs to show cause why their claim for violations of

---

[2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The accuracy of the records of the Court cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981). As a result, the Court may take judicial notice of its own records. Therefore, judicial notice is taken of the Court's orders and docket in *Rojas v. Brown.*, Case No. 1:17-cv-1514-DAD-JLT.

the Americans with Disabilities Act should not be dismissed because "liability under Title II of ADA may not be imposed on individuals." (*Id.*, citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). In the alternative, Plaintiffs were directed to file an amended complaint that addressed these deficiencies. (*Id.* at 3)

The plaintiffs—including Medina— filed a First Amended Complaint on May 1, 2018. (Case No. 1:17-cv-1514-DAD-JLT, Doc. 24) The plaintiffs asserted their rights arising under the First and Eighth Amendments to the United States Constitution were violated. (*See id.* at 3, ¶ 7) Defendants filed a motion to dismiss and sever the claims of Medina from those of Rojas, Lara, and Ayestas due to misjoinder. (Case No. 1:17-cv-1514-DAD-JLT, Doc. 30) The Court granted Defendants' motion for misjoinder, and the claims of Medina were severed from the action on May 15, 2019. (Doc. 2 at 6) In addition, Medina's claims were dismissed with leave to amend. (*Id.*)

Medina filed the Second Amended Complaint now pending before the Court on April 4, 2019. (Doc. 6)

## IV.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

[A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**V.      Section 1983 Claims**

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**VI.      Discussion and Analysis**

Medina raises the following causes of action in his Second Amended Complaint: (1) excessive force in violation of the Eighth Amendment; (2) denial of medical care in violation of the Eighth

Amendment; (3) sexual abuse and harassment in violation of the Eighth Amendment; and (4) failure to adequately hire, train, supervise, and discipline corrections officers. (Doc. 6 at 11-13)

## A. First Claim for Relief: Excessive Force

Medina indicates this claim is raised "against defendants Lieutenant Tegtmeyer, Officer Dalie, Sergeant Rubalcava, Officer Valencia, [and] Officer Del Toro in their individual and official capacities." (Doc. 6 at 11) He alleges the defendants, "while under color of law, used excessive and unnecessary force and in doing so acted maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain or restore discipline, causing harm to plaintiff, in violation of [his] right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment." (*Id.* at 11-12, ¶ 71)

### 1. Excessive Force under the Eighth Amendment

The Eighth Amendment protects inmates from inhumane methods of punishment and conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). One of the "basic human needs" that prison officials must provide is personal safety, and prison officials have a duty to take reasonable steps to protect inmates from physical harm. *Hoptowit v. Ray*, 682 F.2d 1237, 1247, 1250-51 (9th Cir. 1982). To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). However, the Supreme Court has determined that "when prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are always violated." *Id.* (citing *Hudson*, 503 U.S. at 9). In such circumstances, "the only requirement is that the officer's actions be 'offensive to human dignity,'" and a physical injury is not necessary to establish a claim. *Id.* (quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991)).

The Supreme Court determined that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S.

8

at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003). In addition, the Court may consider "the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted) Although the extent of an injury is relevant, the inmate does not need to sustain serious injury. *Id.*; *Wilkins*, 130 S. Ct. at 1178-79. The prohibition on cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. *Hudson*, 503 U.S. at 9-10.

### 2. Claim against Officers Dalie, Rubalcava, and Valencia

Medina asserts that after he exited his cell on January 5, 2017, "Officer Dalie lunged at him," and "attempted to grasp Medina and put him in a headlock." (Doc. 6 at 6, ¶ 26) Medina alleges Dalie then "shut Medina's cell door so that Medina was trapped with him in the Unit," and "again attempted to get Medina in a headlock." (*Id.*, ¶¶ 28-29) Although Medina dodged the headlock, he asserts "Officer Dalie gripped [him] and slammed him against the wall." (*Id.*, ¶ 30) In addition, Medina asserts that once he was taken to the Unit A Program Office, "Sergeant Rubalcava and Officer Valencia slammed … Medina's head into the wall, causing his head to bleed." (*Id.* at 6-7, ¶¶ 47, 50) From the facts alleged, there is no indication Dalie perceived a threat when he "slammed [Medina] against the wall] or when Rubalcava and Valencia "slammed…[his] head into the wall." Thus, the Court finds Plaintiff states cognizable claims against Officers Dalie, Rubalcava, and Valencia.

### 3. Liability of Officer Del Toro

According to Medina, Officer Del Toro was one of the officers who responded to the code called by Dalie. (Doc. 6 at 6, ¶ 33) However, there are no allegations addressing Del Toro's actions after he responded to the code. (*See id.* at 7-8, ¶¶ 34-45) Instead, the only allegations relate to his actions once Medina was taken outside, where "Officer Del Toro approached Medina with a wheelchair." (*Id.* at 8, ¶ 45) Medina asserts that Officer Del Tor assisted other officers with placing Medina in the wheelchair, holding Medina's arms in a manner that "kept his hands straight and lifted over the back of the wheelchair." (*Id.*)

These allegations, without more, are insufficient to demonstrate the use of excessive force by

Officer Del Toro.  To the extent Medina contend the force was improper because he was handcuffed behind his back when Officer Del Toro lifted his arms over the back of the wheelchair, there are no facts supporting a conclusion that Officer Del Toro was aware Medina should be handcuffed only in the front, or that he used any force beyond what was necessary as Medina was placed in the wheelchair.  Thus, the Court is unable to find Officer Del Toro acted in a manner "offensive to human dignity" or used force "maliciously and sadistically."  *See Schwenk*, 204 F.3d at 1197.

Significantly, Plaintiff failed to cure the factual deficiencies of his claim for excessive force against Officer Del Toro.  (*See* Case 1:17-cv-01514-DAD-JLT, Doc. 38 at 22-23)  In light of Medina's repeated failure to allege facts supporting his claim for excessive force against Officer Del Toro, the Court recommends the first claim for relief—to the extent it is raised against Officer Del Toro—be **DISMISSED** without leave to amend.  *See Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1007 (9th Cir. 2009) (a party's failure to cure factual deficiencies on amendment is "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile").

### 4.      Liability of Lieutenant Tegtmeyer

Medina does not identify any use of force by Lieutenant Tegtmeyer, either in the unit or once Medina was taken outside.  Instead, Medina that once he was taken outside—with his pants down—Tegtmeyer "observed the situation unfold outside… [and] made encouraging remarks to the officers." (Doc. 6 at 8, ¶ 46)  Notably, it is unclear what Tegtmeyer was observing at that time.  Plaintiff alleges that once he was outside, "the defendant officers who had assaulted Medina previously again threw Medina to the ground," after which Del Toro approached with the wheelchair and Medina was placed in the chair in a manner that he believes was improper.  Whether Tegtmeyer observed the officers throwing Medina to the ground or only actions related to his placement in the wheelchair is unclear.  Likewise, Medina fails to identify any "encouraging remarks" made by Tegtmeyer, such that the Court can determine Tegtmeyer was encouraging behavior that violated Medina's civil rights.

To the extent the plaintiff contends Tegtmeyer is liable for excessive force for his failure to protect Medina, he fails to present this theory of liability in his Second Amended Complaint.  Moreover, the facts alleged to not support a conclusion that Tegtmeyer was in a position to intervene or had the opportunity to do so before Medina was thrown to the ground by the other officers.

Accordingly, Medina fails to state a claim for excessive force, and the Court recommends the cause of action be **DISMISSED** with leave to amend as raised against Lieutenant Tegtmeyer.

**B.      Second Claim for Relief: Failure to Provide Medical Care**

As individuals in custody must rely upon officials for medical care, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), (internal citation, quotation marks omitted).  To state a cognizable claim for inadequate medical care under the Eighth Amendment, plaintiffs "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*, 429 U.S. at 106.  Thus, the Ninth Circuit explained: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

1.      Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting *Estelle*, 429 U.S. at 104).  Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

The Court finds the allegations sufficient to establish that Medina had a serious medical need, particularly with the dislocated shoulder.  Indeed, the allegations demonstrate that unidentified officers believed Medina needed medical treatment and he was taken for treatment.

2.      Deliberate indifference

If a plaintiff establishes the existence of a serious medical need, he must then show that officials

responded to that need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In clarifying the culpability required for "deliberate indifference," the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference.

*Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson*, 290 F.3d at 1193 (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but, indeed, was not, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* at 1188.

Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent . . . than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." *Holliday v. Naku*, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing *McGuckin*, 974 F.2d at 1060). Generally, deliberate indifference to serious medical needs may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). A claimant seeking to establish deliberate indifference must show "both (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need *and* (b) harm caused by the indifference." *Conn v. City of Reno*, 592 F.3d 1081 (9th Cir. 2010) (emphasis added).

Based upon the facts alleged, it is not clear *when* Medina suffered the dislocated shoulder. The Court cannot presume at what point this injury occurred or infer from the facts which officers—including the defendants—were aware of the injury Medina suffered and the need for medical treatment. Without facts identifying when the injury occurred, or which officers knew of the injury, the Court is unable to find any of the named defendants exhibited deliberate indifference to Medina's serious medical needs. In addition, Medina *was* provided medical care, though he argues officers and nurses took insufficient action in this regard. In any event, there are no facts alleged to demonstrate that the four-hour delay caused him harm.

Notably, Medina's prior complaint suffered the same factual deficiencies. (*See* Case No. 1:17-

cv-1514-DAD-JLT, Doc. 38 at 27-28)  Given his failure to allege additional facts and cure the identified deficiencies, the Court finds further leave to amend the claim would be futile.  *See Zucco Partners*, 552 F.3d at 1007; *see also Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend where the plaintiff failed to correct deficiencies in complaint after the court had afforded opportunities to do so and had discussed with plaintiff the substantive problems with his claims).Accordingly, the Court recommends the second cause of action be **DISMISSED** without leave to amend.

### C.     Third Claim for Relief: Sexual Abuse and Harassment

Medina indicates he brings this claim "against defendants Lieutenant Tegtmeyer, Officer Dalie, Sergeant Rubalcava, Officer Valencia and Officer Del Toro, and in their individual and official capacities."  (Doc. 6 at 12)  He alleges the defendants "sexually abused and harassed plaintiff, an act deeply offensive to human dignity and one that serves no legitimate penological purpose," and in doing "demonstrated malicious and sadistic intent to harm [him]…"  (*Id.* at 13, ¶ 76)

#### 1.     Sexual abuse and harassment under the Eighth Amendment

A sexual assault on an inmate by a prison official implicates the rights protected by the Eighth Amendment.  *Schwenk*, 204 F.3d at 1197; *see also Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological harm").  For this reason, severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation. *Id.; see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (noting the list of conditions held cruel and unusual by the Supreme Court is not exclusive).  Sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and it is "simply not part of the penalty that criminal offenders pay for their offenses against society." *Boddie*, 105 F.3d at 861 (quoting, *Farmer*, 511 U.S. at 834).

On the other hand, the Eighth Amendment protections "do not necessarily extend to mere verbal sexual harassment." *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 903-04 (N.D. Cal. 2004).  Courts have determined repeatedly determined such conduct does not satisfy the "unnecessary and wanton infliction of pain" standard under the Eighth Amendment.  *See, e.g.*, *Blueford v. Prunty*, 108 F.3d 251, 256 (9th Cir. 1997) (affirming summary

adjudication in favor of the prison officials where "the only arguably sexually harassing conduct… was verbal"); *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n. 11 (10th Cir. 1998) (allegations that a county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Zander v. McGinnis*, 1998 U.S. App. LEXIS 13533, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (finding a prisoner's claim that a guard called him "pet names" for ten months failed to support an Eighth Amendment claim "because allegations of verbal abuse do not rise to the level of a constitutional violation"). Thus, incidents that cause "humiliation" may "not rise to the level of severe psychological pain required to state an Eighth Amendment claim." *Watison v. Carter*, 688 F.3d 1108, 1113 (9th Cir. 2012).

### 2. Claim against Officers Dalie, Rubalcava, Valencia, and Del Toro[3]

Medina alleges that his genitals were exposed during a pat down by Officer Mendoza (a female guard), who is not a defendant in this action. (*See* Doc. 6 at 7, ¶ 40) Specifically he asserts: "When Officer Mendoza patted him down, she loosened the string on his pants. As a result, Medina's pants fell and exposed his genitals." (*Id.*) Medina reports that after the pat down, he was escorted outside by unspecified officers, while he "in a tank top with his pants down, exposed…" (*Id.*, ¶ 41) In addition, Medina asserts that his genitals remained exposed when Medina was placed in a wheelchair and throughout the time he was placed in a cell in the Unit A Program office. (*Id.* at 8, ¶¶ 45-48) According to Plaintiff, "[t]he defendant officers continued to berate and make crude comments to him about his gender identity and their perceptions of his masculinity," and "taunted him for not being a 'real man.'" (*Id.* at 9, ¶53)

Importantly, "the Supreme Court has not recognized that an interest in shielding one's naked body from public view should be protected under the rubric of the right of privacy . . . ." *See Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985). Although the Ninth Circuit determined "a prisoner[] [has] limited right to bodily privacy," such a claim "calls for a highly factual inquiry." *See Hydrick v.*

---

[3] Notably, a right to privacy claim is *not* present in the Second Amended Complaint. Nevertheless, the Court addresses the standards governing such claims because Medina's claims concern exposure.

*Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988). Factors the Court has considered include: "the gender of those prison officials who viewed inmates, the angle and duration of viewing, and the steps the prison had taken to minimize invasions of privacy." *Id.*, citing *Grummett*, 779 F.2d at 494-95.

For example, in *Grummett*, the Court considered a claim by male inmates that their right to privacy was violated by female officers viewing them while dressing, showering, being strip searched, or using the toilet. *Id.*, 779 F.2d at 492. The Ninth Circuit assumed "the interest in not being viewed naked by members of the opposite sex is protected by the right of privacy." *Id.*, 779 F.2d at 494. The Court discussed the circumstances in which female officers were observing male inmates, noting:

> Female guards are not assigned to positions requiring unrestricted and frequent surveillance. Rather, the positions to which they are assigned require infrequent and casual observation, or observation at a distance. Female guards working the tiers walk past the cells routinely, but do not stop for prolonged inspection. When they are not walking down the tiers, their view of the inmates in their cells is circumscribed by the cell bars and by the distance and angle of their stations. Likewise, the observations by the female correctional officers stationed on the gunrails overlooking the tiers and the yard areas are obscured by the angle and distance of their locations. Female guards do not accompany male inmates to the individual or gang showers, and are not stationed on the tiers where the showers are located. Females are assigned to the more distant gunrail position overlooking showers, where, again, the surveillance is obscured.

*Id.* at 494-95. The Ninth Circuit concluded that these circumstances were not "so degrading as to require intervention by [the] court," and there was no constitutional violation. *Id.* at 495. Likewise, the Court found there was no constitutional violation because the female guards' viewing of unclothed inmates was "infrequent and irregular," and the guards were not "stationed at those positions which involve close and prolonged surveillance of disrobed inmates." *Id.*

In *Michenfelder v. Sumner*, 860 F.2d 328 (1988), the Ninth Circuit also addressed a claim of a male inmate challenging the stationing of female officers on shower duty and involvement in strip searches as a violation of his right to privacy. *Id.* at 333-34. The Court indicated "the issue … is whether [the prison's] female officers regularly or frequently observe unclothed inmates without a legitimate reason for doing so." *Id.* at 334. The Ninth Circuit found that a division of responsibilities between male and female guards was a reasonable attempt to accommodate the tension between inmates' privacy concerns and the prison's internal security needs and equal employment concerns. *Id.* In addition, the Court found the right to privacy was not violated due to the limited nature of the

guards' involvement in the searches, because the evidence showed observations were made from video monitors that provided "an indistinct, limited view." *Id.* The Court found "[e]vidence of female officers' role in shower duty likewise did not establish an inappropriate amount of contact with disrobed prisoners." *Id.* Accordingly, the Court concluded Michenfelder failed to establish violations of his Fourth and Eighth Amendment rights. *Id.* at 338.

Further, in *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997), the Ninth Circuit considered a male inmate's claim that his constitutional rights under the Fourth Amendment were violated by female officers conducting visual body cavity searches on a regular basis and watching him shower. *Id.* at 616. Somers also asserted the prison officials "'pointed at him' and 'joked among themselves' during the searches and during his showers, behavior he characterize[d] as 'gawking.'" *Id.* Evaluating whether to apply the doctrine of qualified immunity, the Court reviewed its decisions in *Grummett, Michenfelder,* and *Sepulveda. See Somers*, 109 F.3d at 619-20. The Court observed it never "held that guards of the opposite sex are forbidden from viewing showering inmates." *Id.* at 620. The Court continued: "Taken together, however, one might read *Grummett, Michenfelder*, and *Sepulveda* to suggest that up close, frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's privacy rights." *Id.* The Court found it significant that the actions alleged by Somers "did not involve any physical conduct," and concluded "gawking, pointing, and joking" did not violate the Eighth Amendment. *Id.* at 624.

With these cases in mind, the facts alleged to support a claim by Medina are not sufficient to support a claim for sexual abuse or harassment in violation of constitutional standards by Officers Dalie, Rubalcaba, Valencia, or Del Toro. Medina fails to identify any specific comment attributed to each defendant. The Court declines to speculate as to which specific actions—or statements—Medina believes rose to the level of unconstitutional behavior. Further, it is unclear how frequently the officers made such comments while Medina was in the cell, or the extent of Medina's exposure to the guards while in the cell. Such facts are necessary for the Court to determine whether this claim is cognizable.

For example, in *Morris v. Newland*, this Court considered the claim of an inmate plaintiff that officers violated his constitutional rights because female guards "made sure to observe plaintiff at length in the shower and in his cell." *Id.*, 2007 WL 707525 at *1 (E.D. Cal. Mar. 6, 2007). The

16

defendants moved to dismiss, asserting the plaintiff failed to state a claim. *Id.* at *2. The Court noted Ninth Circuit authority "implicate[d] circumstances more severe than those set forth… with respect to plaintiff's cross-gender viewing claims." *Id.* at *4. For example, the Court noted that in *Somers*, the Ninth Circuit found a plaintiff failed to state a constitutional violation "even where the female officials had engaged in 'gawking' at the plaintiff and had pointed at him in the shower 'and joked among themselves.'" *Id.*, citing *Somers*, 109 F.3d at 622. In light of this, the Court found "the[] intentional observation of [the plaintiff] in the shower and in his housing unit in various states of undress" failed to rise to the level of a violation of the Fourth and Eighth Amendments. *Id.* at *5, *adopted by* 2007 WL 987846 (E.D. Cal. Mar. 30, 2007). Even assuming Officers Dalie, Rubalcava, Valencia, and Del Toro intentionally viewed Medina in a state of undress while taunting him in the cell, as this Court determined in *Morris*, the circumstances do not rise to an unconstitutional level.

### 2.    Liability of Lieutenant Tegtmeyer

Medina alleges that "[a]bout 30 minutes into his confinement, Lieutenant Tegtmeyer came to his cell and began making sexual comments..." (Doc. 6 at 9, ¶ 54) Medina asserts that Tegtmeyer "told other guards, in front of Medina, that Medina had not been with a man in a long time. He suggested that he take Medina to a room around the corner to have sex with him. He said no one would know because Medina was already bloodied up from the attack." (*Id.*) As a result, "Medina grew concerned that he would be sexually assaulted or raped by Lieutenant Tegtmeyer." (*Id.*)

While such comments are reprehensible, they do not rise to the level of a constitutional violation. Only severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation. *Schwenk*, 204 F.3d at 1197; *Boddie*, 105 F.3d at 861. As discussed above, courts have repeatedly determined that constitutional protections "do not necessarily extend to mere verbal sexual harassment," and even when coupled with isolated incidents of touching, there is no constitutional violation. *See Austin*, 367 F.3d at 1171; *Watison*, 668 F.3d at 1112-13; *see also Boddie*, 105 F.3d at 859-61 (finding a prisoner failed to state a violation of his constitutional rights where he asserted a female corrections officer made a pass at him, touched him on several occasions, and gave him a nickname); *McBride v. Deer,* 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and

17

verbal taunts do not violate the Eighth Amendment"); *Adkins v. Rodriguez,* 59 F.3d 1034, 1037 (10th Cir. 1995) (verbal sexual harassment by jailer does not amount to a violation of the inmate's Eighth Amendment rights). Because Medina does not identify more than verbal harassment by Tegtmeyer—though clearly reprehensible conduct—the allegations to do not rise to the level of an Eighth Amendment violation.

### 3. Conclusion

Given Medina's failure to cure the factual deficiencies of his claim, the Court finds further leave to amend would be futile and recommends the third claim for relief be **DISMISSED** without leave to amend. *See Zucco Partners,* 552 F.3d at 1007; *Simon*, 208 F.3d at 1084.

**D. Fourth Claim for Relief: Failure to Adequately Hire, Train, Supervise, and Discipline Correction Officers**

The final claim for relief is brought "against defendant Diaz in his official capacities." (Doc. 6 at 13) According to Plaintiff,

> [D]efendants Diaz failed in his obligation to adequately train his corrections officers to refrain from subjecting prisoners to excessive force and sexual abuse and harassment, violations of plaintiff's constitutional and statutory rights, to have in place policies that protect the constitutional and statutory rights of prisoners, and to discipline officers who violate the constitutional and statutory rights of prisoners.

(*Id.*, ¶ 79) Plaintiffs contend that due to these actions—or inaction— "defendant Diaz remains deliberately indifferent to the obvious consequences of his failure to adequately hire, train, supervise, and discipline corrections officers who engage in these constitutional violations." (*Id.*, ¶ 80)

### 1. Supervisor liability under Section 1983

Under Section 1983, a plaintiff must demonstrate that each defendant *personally* participated in the deprivation of their rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) (emphasis added). Thus, liability may not be imposed on supervisory personnel under Section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. *Iqbal*, 129 S.Ct. at 1948-49(2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); accord *Starr v. Baca*, 633 F.3d 1191 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Preschooler II v.*

*Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

A supervisor's failure to train subordinates may give rise to individual liability under Section 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. *Id.* at 1214; *see also City of Canton v. Harris*, 489 U.S. 378, 391 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

<u>2.    Analysis</u>

In a case based on an ongoing violation of federal constitutional or statutory rights, a plaintiff may obtain prospective injunctive relief by naming a state official in his or her official capacity. *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("When sued for prospective injunctive relief, a state official in his official capacity is considered a 'person' for § 1983 purposes.").

Medina seeks to hold Ralph Diaz, the Secretary of California Department of Corrections and Rehabilitation, liable in his official capacity.  (*See* Doc. 6 at 4, ¶ 10)  According to Medina, "Diaz is responsible for ensuring that the CDCR complies with all state and federal laws, and that the civil and legal rights of individuals confined by CDCR are upheld." (*Id.*) Medina asserts that Diaz was "responsible for ensuring that officers are trained to refrain from violations of the law and has ultimate responsibility for disciplining officers who violate those laws." (*Id.*at 10, ¶ 63) Medina also alleges Diaz is "responsible for training staff to refrain from sexual harassment and sexual abuse, the right to be free from retaliation for reporting harassment and abuse, and how to communicate respectfully and effectively with lesbian, gay, transgender, and gender non-conforming prisoners." (*Id.*)

Significantly, there are no facts alleged supporting assertion that Diaz—as the Secretary of CDCR—has an obligation to *train* the officers that work at CDCR's institutions such as CCWF. Indeed, such a claim seems dubious.  Although Medina cites 28 CFR §115.31 to support his assertion, this provision merely provides that "the agency shall train all employees…" and does not indicate the

responsibility falls upon the Secretary of the CDCR. *See* 28 CFR §115.31; *see also* 28 CFR §115.5 (defining agency as "unit of a State, local, corporate, or nonprofit authority, or of the Department of Justice, with direct responsibility for the operation of any facility that confines inmates, detainees, or residents, including the implementation of policy as set by the governing, corporate, or nonprofit authority") Further, Medina's claims against Diaz fail because he has not identified a state policy or procedure at issue for his request for injunctive relief. *See Haber v. Melo*, 502 U.S. 21, 25 (1991)).

Significantly, the Court identified the same pleading deficiencies in dismissing the claim against the Secretary of the CDCR. (*See* Case No. 1:17-cv-1514-DAD-JLT, Doc. 38 at 39) Despite this, Medina has not alleged additional facts to support a claim. In addition, he failed to identify the injunctive relief sought in the Second Amended Complaint, such that the Court can determine prospective injunctive relief is a viable and available remedy. Consequently, the Court recommends the claims against Diaz be **DISMISSED** without leave to amend. *See Zucco Partners,* 552 F.3d at 1007 (failure to cure deficiencies on amendment is "a strong indication that the [party] has no additional facts to plead" and "that any attempt to amend would be futile"); *Simon*, 208 F.3d at 1084.

### E. Dismissal of other Defendants

Because Medina's claims were severed from the claims of Rojas, Lara, and Ayestas, the Second Amended Complaint does not include claims against several defendants. Medina does not state claims against Janel Espinoza, Derral Adams, Deborah Johnson, Jason Collier, Miguel Herrera, Steven Reynolds, or Israel Trevino. In addition, it appears Diaz has replaced Scott Kernan as Secretary of the CDCR. Accordingly, the Court recommends these individuals be terminated as defendants in this action.

## V. Findings and Recommendations

Based upon the foregoing, the Court finds Medina failed to allege sufficient *facts*—rather than legal conclusions—to support several claims raised in the Second Amended Complaint. Thus, the Court **RECOMMENDS**:

1. The First Claim for Relief, for excessive force, be **DISMISSED without leave** to amend to the extent it is brought against Officer Del Toro and **DISMISSED with leave** to the extent it is brought against Lieutenant Tegtmeyer;

2. The Second Claim for Relief, for denial of medical care, be **DISMISSED** without leave to amend;

3. The Third Claim for Relief, for sexual abuse and harassment, be **DISMISSED** without leave to amend;

4. The Fourth Claim for relief be **DISMISSED** without leave to amend;

5. Defendants Ralph Diaz and Janel Espinoza be **DISMISSED**; and

6. Janel Espinoza, Derral Adams, Deborah Johnson, Jason Collier, Miguel Herrera, Steven Reynolds, Israel Trevino, and Scott Kernan be **TERMINATED** as defendants.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these Findings and Recommendations, any party may file written objections. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed within seven days of the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   __**May 3, 2019**__            _____**/s/ Jennifer L. Thurston**

                                           UNITED STATES MAGISTRATE JUDGE